## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**JUST BORN, INC.**

                    **Plaintiff,**

v.

**BAKERY, CONFECTIONARY, TOBACCO WORKERS AND GRAIN MILLERS INTERNATIONAL UNION, LOCAL 6, AFL-CIO**

                    **Defendant**

**Civil Action No. 02-CV-2626**

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The Defendant, Bakery, Confectionary, Tobacco Workers and Grain Millers International Union, Local 6, by and through their counsel, hereby moves this Court to grant summary judgment in its favor on the grounds that there is no genuine issue as to any material fact and that the Union is entitled to judgement as a matter of law for the following reasons:

(1)      the Simpkins Award draws its essence from the 1999 Agreement and is rationally derived therefrom;

(2)      the Simpkins Award falls within the Arbitrator's contractual jurisdiction and authority; and

(3)      the Simpkins Award does not violate any explicit, well-defined and dominant public policy.

The bases for this Motion are set forth in the accompanying Memorandum of Law.

**WHEREFORE**, Defendant respectfully request that this Motion be granted, and that the proposed Order be entered by the Court.

Respectfully submitted,

_____

RICHARD G. POULSON, ESQUIRE
Willig, Williams & Davidson
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
(215) 656-3600

Dated: November 22, 2002          Attorneys for Defendant

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JUST BORN, INC.** | |
| **Plaintiff,** | **Civil Action No. 02-CV-2626** |
| **v.** | |
| **BAKERY, CONFECTIONARY, TOBACCO WORKERS AND GRAIN MILLERS INTERNATIONAL UNION, LOCAL 6, AFL-CIO** | |
| **Defendant** | |

## <u>ORDER</u>

AND NOW, this _____ day of _____ 2002, it is hereby ORDERED that

Defendant's Motion for Summary Judgment is GRANTED, for the reasons stated in

Defendant's Motion and Memorandum in Support and incorporated herein by

reference.

BY THE COURT:

_____
                                                        J.

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JUST BORN, INC.

                Plaintiff,

v.

BAKERY, CONFECTIONARY, TOBACCO
WORKERS AND GRAIN MILLERS
INTERNATIONAL UNION, LOCAL 6,
AFL-CIO

                Defendant

Civil Action No. 02-CV-2626

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**WILLIG, WILLIAMS & DAVIDSON**

Richard G. Poulson, Esquire
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
(215) 656-3600

Dated: November 22, 2002          Attorneys for Defendant, BCTGM Local 6

TABLE OF CONTENTS

Page #

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        A.      The Parties and the Agreement  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        B.      The Employment and Discharge of Paul Dannenhower . . . . . . . . . . . . . 3

                1.      The June 22, 2000 "breast-feeding" conversation  . . . . . . . . . . . . 3

                2.      The July 2000 "harassment" allegation and discipline  . . . . . . . . . 4

        C.      The Contractual Grievance-Arbitration Process  . . . . . . . . . . . . . . . . . . 5

                1.      The December 2001 arbitration hearing  . . . . . . . . . . . . . . . . . . . 6

                2.      The April 2002 arbitration award  . . . . . . . . . . . . . . . . . . . . . . . . 6

III.    ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        A.      The Standards for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . 9

        B.      The Court Should Confirm and Enforce the Simpkins
                Award Because It Derives Its Essence From the Collective Bargaining
                Agreement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        C.      The Court Should Confirm and Enforce the Simpkins Award Because It
                Does Not Conflict with Public Policy  . . . . . . . . . . . . . . . . . . . . . . . . . . 14

                1.      The public-policy exception is extremely narrow  . . . . . . . . . . . . . 14

                2.      Third Circuit precedent support's the Union's position  . . . . . . . . 18

                3.      The public-policy exception does not apply in this case  . . . . . . . 19

IV.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

TABLE OF AUTHORITIES

Page #

<u>Cases</u>

Am. Eagle Airlines v. Air Line Pilots Ass'n,
197 F.Supp. 2d 580 (N.D. Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986) . . . . . . . . . . . . . . . . . . . . . . . 9

Boston Med. Ctr. v. SEIU, Local 285, 260 F.3d 16 (1st Cir. 2001) . . . . . . . . . . . . . . 16

Celotex Corp. v. Catrett,
477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986) . . . . . . . . . . . . . . . . . . . . . . . 9

De Enfermeras Empleados v. Hosp. De Damas,
171 F.Supp. 2d 38 (D.C. Puerto Rico 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Eastern Associated Coal Corp. v. United Mine Workers,
531 U.S. 57, 121 S.Ct. 462 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14-18

J.E. Mamiye & Sons, Inc. v. Fidelity Bank,
13 F.3d 610, (3d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Major League Baseball Players Ass'n v. Garvey,
532 U.S. 504, 121 S.Ct. 1725, 149 L.Ed.2d 740 (2001) . . . . . . . . . . . . . . . . . . . . . . 10

MidAmerican Energy Co. v. Int'l Bhd of Electrical Workers Local 499,
2002 U.S. Dist. LEXIS 20457, (S.D. Iowa October 18, 2002) . . . . . . . . . . . . 14, 15, 17

National Ass'n of Letter Carriers v. U.S.P.S.,
272 F.3d 182, (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

New Eng. Health Care Employees Union v. R.I. Legal Servs.,
273 F.3d 425 (1st Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Pan Am. Corp. v. Air Line Pilots Assoc., Int'l,
206 F.Supp. 2d 12 (D.C.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

S. Cal. Gas Co. v. Util. Workers Union, Local 132,
265 F.3d 787 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Sladek v. Northwest Airlines, Inc.,
2001 U.S. Dist. LEXIS 20888 (D.C. Minn. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Stroehmann Bakeries, Inc. v. Local 776, Int'l Bhd. of Teamsters,
969 F.2d 1436 (3d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-20

Teamsters Local Union 58 v. BOC Cases,
249 F.3d 1089 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

Tenet Healthsystem MCP. L.L.C. v. Pennsylvania Nurses Ass'n Local 712,
2001 U.S. Dist. LEXIS 21535 (E.D. Pa. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

United Paperworkers Int'l Union v. Misco, Inc.,
484 U.S. 29, 108 S.Ct. 364 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10, 11

United Parcel Serv. v. Int'l Bhd. Of Teamsters,
55 F.3d 138, (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

United Steelworkers of America v. Enterprise Wheel & Car Corp.,
363 U.S. 593, 80 S.Ct. 1358 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

United Trans. Union Local 1589 v. Suburban Transit Corp.,
51 F.3d 376, (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber Workers,
461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed. 2d 298 (1983) . . . . . . . . . . . . . . . . . . . . .  14

Warehousemen & Helpers Union Local 767,
253 F.3d 821 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

Weber Aircraft, Inc. v. General Warehousemen & Helpers Union Local 767,
253 F.3d 821 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16, 17, 19, 20

Westvaco Corp. v. United Paperworkers Int'l Union,
171 F.3d 971, 977 (4th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

Williams v. Philadelphia Housing Authority,
834 F.Supp. 794, (E.D. Pa. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

Statutes

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

**I.    INTRODUCTION**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant, Bakery, Confectionary, Tobacco Workers and Grain Millers International Union, Local 6 ("Local 6" or "the Union") files this Memorandum of Law in Support of its Motion for Summary Judgment.

On April 5, 2002, Arbitrator John Paul Simpkins issued a labor arbitration award ("Simpkins Award")[1] in which he determined that Just Born, Inc. ("the Company") breached its collective bargaining agreement with Local 6 when it terminated employee Paul Dannenhower without just cause. In his Award, the Arbitrator ordered the Company to rescind the discipline and reinstate Dannenhower to his former position of employment, with back pay.

On May 1, 2002, Just Born filed a Complaint with this Court seeking to vacate the Simpkins Award, arguing that the Award violated public policy and that it exceeded the Arbitrator's authority under the collective bargaining agreement. (Company Complaint ¶¶ 27, 32.)

On July 2, 2002, the Union filed its Answer and Affirmative Defenses to the Complaint, as well as its own Counterclaim to enforce the Award. As set forth in the Counterclaim and explained more fully below, the Simpkins Award should be enforced because it draws its essence from the collective bargaining agreement, and it is by the agreement's terms "final and binding" on the parties. Further, the Award neither violates public policy nor exceeds the Arbitrator's authority under the contract.

---

[1] A true and correct copy of the Simpkins Award is attached to this Memorandum as Exhibit A.

1

Because there is no genuine issue as to any material fact, the Union respectfully requests that this Court confirm and enforce the Simpkins Award.

## II.    STATEMENT OF FACTS

### A.    The Parties and the Agreement

The Company and Local 6 are parties to a series of collective bargaining agreements, which govern the working conditions of the Union's bargaining unit of production, maintenance, sanitation and shipping/receiving employees at the Company's Bethlehem, Pennsylvania facility.  The contract in place when the Company violated the agreement became effective on July 1, 1999 and continues through June 30, 2003 ("1999 Agreement" or "Agreement").[2]

The 1999 Agreement limits the Company's right to impose discipline upon bargaining unit members.  Specifically, Article III of the Agreement grants the Company the right "to suspend and discharge for proper cause. . ."  (Agreement, Art. III, at 8.)

The 1999 Agreement also provides the Union with a mechanism to challenge Company actions that it contends violate the terms of the Agreement.  Article XIX sets forth a grievance procedure to resolve questions "as to the meaning and application of the provisions of [the] Agreement."  (Agreement, Art. XIX(1), at 32.)  Pursuant to this procedure, unresolved grievances may be submitted to an impartial arbitrator selected by the parties in accordance with the rules of the American Arbitration Association.  (Agreement, Art. XIX(3), at 34.)  Article XIX states that "[t]he award of the arbitrator shall be final and binding on all parties, " and also addresses the arbitrator's authority:

---

[2]  A true and correct copy of the 1999 Agreement is attached to this Memorandum as Exhibit B.

2

> An arbitrator to whom any grievances shall be submitted in accordance with the provisions of this Article shall have jurisdiction and authority to interpret and apply the provisions of this Agreement insofar as shall be necessary to the determination of such grievance, but he shall not have the jurisdiction or authority to alter in any way the provisions of this Agreement.

(Agreement, Art. XIX(3), at 35.)

In sum, the 1999 Agreement establishes a "just" or "proper" cause standard for disciplinary actions, and grants an arbitrator the authority to resolve disputes over whether the Company has satisfied that standard in disciplining employees covered by the Agreement.

### B.    The Employment and Discharge of Paul Dannenhower

The Company's breach in this case came at the expense of ten-year employee Paul Dannenhower.  Mr. Dannenhower started working for Just Born in November 1992, and spent his career with the Company working as a Helper in the Pan Room. By all accounts, Dannenhower was a solid employee.  He came to work every day, and he performed his job well.

### 1.    The June 22, 2000 "breast-feeding" conversation

On June 22, 2000, Paul Dannenhower stopped by Just Born personnel office to request tickets that had been offered to a local game preserve.  After receiving the tickets from a female employee who worked in the office, Dannenhower thanked her, then congratulated her, as she had recently announced that she was pregnant with her first child.  (Award, at 12.)  The employee "pleasantly received" these congratulations. Id.

3

Dannenhower and the employee then engaged in small-talk concerning her pregnancy, during which conversation Dannenhower asked the employee whether she planned to breast feed her new baby.[3]  The employee did not refuse to answer Dannenhower's question, nor did she give him any indication that she was uncomfortable discussing that topic.  Instead, the employee told Dannenhower that she intended to breast-feed her baby.

Dannenhower next advised the employee that she could share breast milk with her husband on occasions where her baby refused to take her milk.  When the employee responded that this sounded "disgusting," Dannenhower attempted to explain that the practice was an acceptable method of dealing with that situation, as he had learned from his family doctor during his wife's pregnancies.  But before Dannenhower could finish his explanation, the employee again said that his suggestion was disgusting and started to walk out of the office.  Dannenhower did not attempt to prevent the employee from leaving the office, nor did he attempt to follow her out. Instead, Dannenhower let her pass and made no further attempt to continue their conversation.  Dannenhower then finished his shift, went home, and thought nothing more of this brief  conversation.

### 2.    The July 2000 "harassment" allegation and discipline

---

[3]    Dannenhower testified that he asked this question out of genuine curiosity, and not to harass anyone.  Dannenhower's wife breast-fed his own children, and based on his wife's experiences Dannenhower believed that breast-feeding was a healthier alternative to formula.  He merely intended to share this advice with the younger, less-experienced parent-to-be.

After the June 22 conversation, Dannenhower's co-worker also completed her work day without incident. She did not complain to any co-worker about Dannenhower's allegedly offensive comments. And she did not complain to any supervisor about those comments. Instead, she finished her work day, went home, and the next day left with her husband for a previously scheduled vacation.

Almost two weeks later, in July 2000, the employee returned to work. At some point after her return, she mentioned the breast-feeding conversation to a co-worker. And when the co-worker suggested that she report the conversation to management, she did just that.

During this same time period, Paul Dannenhower also took a pre-planned vacation. On July 17, 2000, one week after his July 10 return to work, Dannenhower was summoned to a meeting with plant management, during which meeting Dannenhower first learned of the "harassment" allegation stemming from his June 22 conversation. Significantly, Dannenhower did not dispute the nature of the conversation, but instead he explained that his comments were not intended to be offensive and that he was merely talking about the "facts of life." Despite this honest explanation, Company management concluded that Paul Dannenhower's June 22 conduct constituted "unacceptable and inappropriate harassment of a female employee." They suspended Dannenhower immediately, and on July 20, 2000, the Company converted the suspension to a discharge.

### C.    The Contractual Grievance-Arbitration Process

On July 28, 2000, the Union filed a timely grievance challenging the Dannenhower discharge, pursuant to Article XIX of the collective bargaining

agreement.  The Union asserted that Dannenhower's dismissal was not for just/proper cause under the Agreement and demanded that the discipline be rescinded.  The Company denied the Dannenhower grievance, and the matter was then submitted to final and binding arbitration per Article XIX of the Agreement.  The parties selected Arbitrator John Paul Simpkins to resolve the grievance.

### 1.    The December 2001 arbitration hearing

On December 13, 2001, the parties conducted an arbitration hearing before Arbitrator Simpkins, at which time the parties stipulated that the issue before the Arbitrator was whether Paul Dannenhower was discharged for just cause and, if not, what the remedy should be.  At the hearing, both the Union and the Company offered testimony and other evidence on the propriety of Dannenhower's dismissal, including the testimony of Dannenhower and the female employee he spoke with on June 22, 2000.  After the hearing the parties also submitted post-hearing briefs.[4]

### 2.    The April 2002 arbitration award

On April 5, 2002, Arbitrator Simpkins issued the Award, in which he found that the Company did not have just cause to dismiss Paul Dannenhower.  As a result, the Arbitrator sustained the Union's grievance and ordered the Company to reinstate Dannenhower with back pay.  (Simpkins Award, at 16.)

In his Award, Arbitrator Simpkins found that it was the Company's burden to prove that Dannenhower engaged in some affirmative misconduct on June 22, 2000 that warranted discipline: "Implicit in the concept of just cause for discipline is the

---

[4]  True and correct copies of the Union's and the Company's post-hearing briefs are attached to this Memorandum, as Exhibits C and D, respectively .

6

requirement of wrongdoing; a violation of some rule of conduct or otherwise
unacceptable [conduct] in the work environment."  (Award, at 14.)[5]  At the hearing, the
Company contended that the alleged misconduct was Dannenhower's supposed
violation of Just Born's EEO policy, which prohibits by its terms "offensive conduct
directed at an employee because of his or her sex."  (Id.)  In order to justify the
discipline, then, the Arbitrator explained that the Company was bound to prove that
Dannenhower's June 22 conduct was, "in the context of the EEO policy, . . .
unwelcome, offensive, hostile, intimidating or abusive in a sexually harassing manner."
(Award, at 15.)  The Arbitrator found that the Company failed to satisfy this burden,
because it did not prove that Dannenhower's conduct constituted "unacceptable and
inappropriate harassment":

> As between adults, it cannot be said that the grievant's comments were
> per se offensive or harassing or sexual in nature.  Neither did it create for
> the [female] employee an environment that was hostile, intimidating or
> abusive based on her testimony, her conduct and her intention to report
> and grieve the grievant's commentary and behavior.  Evidence to the
> contrary in this regard is . . . unpersuasive.

(Award, at 14.)

Thus, after considering all of the testimony and evidence, including the
testimony of both participants to the June 22 conversation, the Arbitrator concluded that
the Company failed to prove that Paul Dannenhower's conduct constituted
"unacceptable and inappropriate harassment."  (Award at 12.)  And because the
Company failed to prove any misconduct, it likewise failed to satisfy its burden to prove

---

[5]  See Elkouri & Elkouri, How Arbitration Works, 5th Ed., at 884-87 (Discipline
and Discharge).

7

that the discipline was for just cause: "[T]he violation is not clear and what the

Company sought to prove was not convincing . . .   In the absence of a triggering event

which will support discipline, the grievant's discharge cannot stand."  (Award, at 15.)

As a result, the Arbitrator sustained the Union's grievance and awarded the following:

> The Company shall expunge the record of this discipline from the
> employees' files and is directed to reinstate the grievant to his former
> position of seniority with no loss of benefits and with full back pay.  The
> Company may take credit for any of grievant's earnings during the period
> of separation.

(Award, at 1.)  This award, which flows directly from Articles III and XIX of the

Agreement and clearly falls within the Arbitrator's grant of authority, is what the

Company now asks this Court to vacate.

III.    **ARGUMENT**

In its Complaint, the Company attacks the Union's ability to enforce a "final and binding" arbitration award secured through the contractual grievance-arbitration procedure.    This attempt to frustrate the rights of Local 6's bargaining unit members must be rejected, however, because: (1) the disputed Award concerns an issue plainly within the scope of the 1999 Agreement and was rationally derived therefrom; and (2) the Award does not conflict with any explicit, well-defined and dominant public policy.

A.    **The Standards for Summary Judgment**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgement as a matter of law.  Fed. R. Civ. P. 56(c).  Celotex Corp. v. Catrett, 477 U.S.. 317, 322-24. 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986).  Rule 56 requires a threshold inquiry of "whether there is the need for a trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986).  Therefore, a motion for summary judgment should be granted unless the party opposing the motion can adduce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor.  J.E. Mamiye & Sons, Inc. v. Fidelity Bank, 813 F.3d 610, 618 (3d Cir. 1987)(citing Anderson and Celotex Corp.)

Cross-motions for summary judgment should be considered separately, and each party will bear the burden of establishing lack of genuine issue of material fact. Williams v. Philadelphia Housing Authority, 834 F.Supp. 794, 797 (E.D. Pa. 1994).

9

Because there are no material facts in dispute demonstrating that Arbitrator

Simpkins' Award must be vacated, the Union respectfully requests this Court to grant

the Union Motion for Summary Judgment.

**B.    The Court Should Confirm and Enforce the Simpkins Award Because It Derives Its Essence From the Collective Bargaining Agreement.**

Judicial review of a labor arbitration award pursuant to a collective bargaining

agreement is extremely limited.  <u>Major League Baseball Players Ass'n v. Garvey</u>, 532

U.S. 504, 121 S.Ct. 1725, 1728, 149 L.Ed.2d 740 (2001).  Due to the federal policy of

settling labor disputes by arbitration, a court should <u>not</u> review an arbitrator's decision

on the merits, even where the award rests on factual errors or misinterprets the

agreement.  <u>Eastern Associated Coal Corp. v. United Mine Workers</u>, 531 U.S. 57, 62,

121 S.Ct. 462 (2000); <u>National Ass'n of Letter Carriers v. U.S.P.S.</u>, 272 F.3d 182, 185

(3d Cir. 2001)(enforcing arbitration award in discharge case).  Instead, a reviewing

court should enforce the award so long as it "draws its essence from the collective

bargaining agreement" and the arbitrator is not fashioning "his own brand of industrial

justice."  <u>United Paperworkers Int'l Union v. Misco, Inc.</u>, 484 U.S. 29, 36 108 S.Ct. 364

(1987) (quoting <u>United Steelworkers of America v. Enterprise Wheel & Car Corp.</u>, 363

U.S. 593, 597, 80 S.Ct. 1358 (1960)); <u>United Parcel Serv. v. Int'l Bhd. Of Teamsters</u>, 55

F.3d 138, 141 (3d Cir. 1995).

The Third Circuit has described the test for determining whether a labor

arbitration award draws its essence from a collective bargaining agreement as

"singularly undemanding."  <u>United Trans. Union Local 1589 v. Suburban Transit Corp.</u>,

51 F.3d 376, 379 (3d Cir. 1995).  Under this test, a court must affirm an award on

10

appeal as long as the arbitrator "is even <u>arguably</u> construing or applying the contract and acting within the scope of his authority."  <u>Misco</u>, 484 U.S. at 38 (emphasis added).

As applied here, the highly deferential standard requires that the Simpkins Award be enforced, because the Award draws its essence from the collective bargaining agreement and represents Arbitrator Simpkins' proper exercise of his authority under the collective bargaining agreement between Just Born and Local 6.  In issuing his Award the Arbitrator did nothing more than what the parties asked him to do -- he resolved a relatively straightforward discipline dispute, in which he interpreted the collective bargaining agreement and formulated an Award reflecting that interpretation.

As explained at Part II of this Memorandum, Article III of the 1999 Agreement provides that the Company may "suspend and discharge [a bargaining unit member] for proper cause," thus establishing a "just cause" standard for disciplinary actions.[6] (Agreement, at 8.)  Article XIX of the Agreement (Settlement of Grievance and Arbitration) permits the Union to file grievances concerning the "meaning and application of the provisions of [the] Agreement," and to submit unresolved grievances to "final and binding" arbitration.[7]  Article XIX also specifically grants the arbitrator "jurisdiction and authority to interpret and apply the provisions of [the] Agreement" to

---

[6]  Notwithstanding the use of "proper" cause in Article III, both parties agreed that the issue in the Dannenhower arbitration was whether the discipline was for "just cause," a more commonly-used term in labor arbitrations involving discipline.

[7]  Agreement, Article XIX(1), at 32; Article XIX(3), at 34 ("The award of the arbitrator shall be final and binding on all parties . . .").

the extent necessary to resolve the grievance submitted to them for resolution.[8]  Thus, the express terms of the Agreement establish standards for discipline and provide for arbitration of disciplinary disputes, in which cases arbitrators necessarily will be required to determine the existence of just (or proper) cause, and, if none, to formulate an appropriate remedy.

This process is <u>exactly</u> what took place in the case of Paul Dannenhower.  In June 2000, the Company discharged Dannenhower for allegedly engaging in "unacceptable and inappropriate harassment of a female office employee."  (Award, at 12.)  The Union filed a grievance challenging that action, and the parties submitted that grievance for binding arbitration.  The undisputed issue at that arbitration was whether the Dannenhower discipline was for just cause and, if not, what remedy was appropriate.  At the arbitration hearing, both parties presented witnesses and other evidence, then post-hearing briefs, in support of their respective positions.  And finally, the Arbitrator issued an Award in which he determined that the Company did not have just cause to discipline Paul Dannenhower, and ordered Dannenhower's reinstatement with back pay.  In all, this was an absolutely routine discipline arbitration, exactly of the sort contemplated by Articles III and XIX of the 1999 Agreement.  Clearly, then, the Simpkins Award flows <u>directly</u> from the Agreement, and because of this the Award must be enforced.

In its Complaint, the Company makes breezy reference to the Arbitrator's "contractual authority" and to "public policy," but it is altogether apparent here that the

---

[8]  Agreement, Article XIX(3)(A), at 35.

Company refuses to implement the Simpkins Award simply because it <u>disagrees</u> with the Arbitrator's decision.  But it is similarly apparent that the Award must be enforced regardless of the Company's regrets, because the courts in this and other federal circuits have routinely recognized the federal policy in favor of <u>finality</u> of labor arbitration awards.  This policy is derived from the fundamental recognition that parties to a collective bargaining agreement bargain only for a procedure in which an arbitrator will interpret their contractual disputes, nothing more and nothing less.  In other words, parties do not bargain for correct or incorrect interpretations; they bargain for interpretations.  Because of this, a disappointed party cannot seek to avoid an unfavorable arbitration award merely because they disagree with its content.  <u>National Ass'n of Letter Carriers</u>, 272 F.3d at 184-85; <u>Tenet Healthsystem MCP. L.L.C. v. Pennsylvania Nurses Ass'n Local 712</u>, 2001 U.S. Dist. LEXIS 21535 (E.D. Pa. 2001)("It is the arbitrator's construction of the agreement, not the court's construction, to which the parties have agreed.")

In this case, the Company and the Union presented the Arbitrator with a straightforward issue of just cause and remedy, and the Arbitrator concluded that the Company lacked proper cause to support its discipline.  In light of the clear language contained at Articles III and XIX of the Agreement, the Arbitrator's determination is firmly rooted in the collective bargaining agreement, and the Company's contention that this determination is somehow flawed simply cannot suffice to excuse its attempt to evade its contractual obligations.  The Simpkins Award draws its essence from the collective bargaining agreement, and it must be enforced.

13

**C.    The Court Should Confirm and Enforce the Simpkins Award Because It Does Not Conflict with Public Policy**

The Company argues that the Simpkins Award should be vacated because it contravenes a well-established public policy in favor of preventing sexual harassment in the workplace.  But this argument must fail, because there is no explicit, well-defined and dominant public policy that prohibits a contractual requirement to reinstate an employee who has been accused of, but determined not to have engaged in, the sexual harassment a co-worker.[9]

**1.    The public-policy exception is extremely narrow**

Notwithstanding the strict limits on judicial scrutiny of labor arbitration awards, there is a very narrow "public policy" exception to this general rule, under which an arbitration award may be vacated only if its terms violate an "explicit, well-defined and dominant" public policy, as "ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests."  Eastern Associated Coal, 531 U.S. at 62 (quoting W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber Workers, 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed. 2d 298 (1983)). Further, a court's determination whether a public-policy violation exists must necessarily be construed against "the background labor law policy favoring determination of disciplinary questions through arbitration when chosen by labor-management negotiation."  Eastern Associated Coal, 531 U.S. at 65; MidAmerican Energy Co. v. Int'l Bhd of Electrical Workers Local 499, 2002 U.S. Dist. LEXIS 20457,

---

[9]  In fact, as will be explained in greater detail below, there is no explicit, well-defined and dominant public policy that would prohibit a contractual agreement to reinstate an employee who has in fact engaged in sexually-harassing conduct.

14

at *26 (S.D. Iowa October 18, 2002).  In other words, the public-policy exception is exceptionally difficult to establish.[10]  And the Company here cannot meet this significant burden.

In Eastern Associated Coal Corp. v. United Mine Workers, 531 U.S. 57, 62, 121 S.Ct. 462, 148 L.Ed. 2d 354 (2000), the U.S. Supreme Court's most recent pronouncement on the public-policy exception, the Court made abundantly clear that the exception is a very narrow one.  In that case, an employer sought to vacate an arbitration award reinstating a truck-driver who had twice tested positive for drug use. The employer argued that the award violated a public-policy against the operation of dangerous machinery by workers who test positive for drugs, and cited in support of its contention regulations promulgated by the Department of Transportation pursuant to the Omnibus Transportation Employee Testing Act, which required employees to submit to random drug tests and mandated discipline of employees who operated their vehicle while under the influence of drugs.  Id. at 61.

The Supreme Court rejected this argument.  In its decision, the Court first clarified the scope of its review, focusing on the arbitration award itself and not the underlying conduct of the employee:

> [T]he question to be answered is not whether [the employee's conduct] itself violates public policy, but whether the agreement to reinstate him does so.  To put the question more specifically, does a contractual agreement to reinstate [the employee] run contrary to an explicit, well-

---

[10]  "Eastern Associated Coal . . . stands as a strong reminder that courts are only to refuse enforcement of arbitral awards in exceptional circumstances."  MidAmerican, at *26.  See Eastern Associated Coal, 531 U.S. at 68 (characterizing decision as posting "a giant 'Do Not Enter' sign" at the door to "flaccid public policy arguments")(Scalia, J., concurring).

15

> defined, and dominant public policy, as ascertained by reference to
> positive law and not from general considerations of supposed public
> interests?

Eastern Associated Coal, at 62-63.[11]

The Court next considered the statute and regulations cited by the employer, but concluded that neither those rules nor "any other law or legal precedent" contained an "explicit, well defined, dominant public policy to which the arbitrator's decision [ran] contrary." Id. at 67 (quotations omitted).[12]  Accordingly, the Court held that the employer could not rely on the public-policy exception to evade its obligations under the collective bargaining agreement.  The Court therefore enforced the award.

In the wake of Eastern Associated Coal, federal courts have been increasingly hostile to public-policy attempts to evade arbitration awards.  In fact, federal courts have flatly rejected public-policy arguments in each of the ten reported decisions since Eastern Associated Coal where parties have offered that argument to justify their failure to comply with an arbitration award.[13]  One of these decisions, Weber Aircraft, Inc. v.

_____

[11] As applied in this case, this Court should treat the Simpkins Award as if it represents an agreement between Just Born and the Union as to the proper meaning of the contractual term "proper cause," and requiring that Paul Dannenhower be reinstated.  The Court's task then is to decide whether this contractual reinstatement-requirement, and not Dannenhower's alleged conduct, violates public policy.

[12] "Neither the [statute] nor the regulations forbid an employer to reinstate in a safety-sensitive position an employee who fails a random drug test once or twice." Id. at 65.

[13] Boston Med. Ctr. v. SEIU, Local 285, 260 F.3d 16 (1st Cir. 2001)(enforcing award in discipline case); New Eng. Health Care Employees Union v. R.I. Legal Servs., 273 F.3d 425 (1st Cir. 2001)(enforcing award that denied grievance); Weber Aircraft, Inc. v. General Warehousemen & Helpers Union Local 767, 253 F.3d 821 (5th Cir. 2001) (enforcing award of reinstatement; rejecting "sexual harassment" public policy argument); S. Cal. Gas Co. v. Util. Workers Union, Local 132, 265 F.3d 787 (9th Cir.

General Warehousemen & Helpers Union Local 767, 253 F.3d 821 (5th Cir. 2001), is particularly instructive.

In Weber, the court was asked to decide whether a labor arbitration award that reinstated an employee who sexually harassed a co-worker ran contrary to a public policy against sexual harassment in the workplace.  Weber, 253 F.3d at 823.  The arbitrator in that case found that a dismissed employee sexually harassed a female co-worker, but that there was not just cause to support the penalty of discharge.  As a result, the arbitrator reduced the penalty from discharge to suspension, and reinstated the harasser without back pay.

In deciding whether to enforce the arbitration award in the face of the employer's public-policy argument, the Firth Circuit applied the narrow Eastern Associated Coal standard and surveyed case law from other federal circuits.[14]  The court ultimately concluded that there was no "explicit, well-defined and dominant" public policy prohibiting the reinstatement of sexual-harassers who have been otherwise sanctioned

---

2001)(enforcing award of reinstatement); Teamsters Local Union 58 v. BOC Cases, 249 F.3d 1089 (9th Cir. 2001)(enforcing award of reinstatement); MidAmerican Energy Co. v. IBEW Local 499, 2002 U.S. Dist. LEXIS 20457 (S.D. Iowa October 18, 2002)(enforcing award of reinstatement; rejecting "harassment" public policy argument); Pan Am. Corp. v. Air Line Pilots Assoc., Int'l, 206 F.Supp. 2d 12 (D.C.D.C. 2002); Am. Eagle Airlines v. Air Line Pilots Ass'n, 197 F.Supp. 2d 580 (N.D. Tex. 2002)(rejecting public policy argument; vacating award on other grounds); De Enfermeras Empleados v. Hosp. De Damas, 171 F.Supp. 2d 38 (D.C. Puerto Rico 2001)(enforcing award that sustained discharge); Sladek v. Northwest Airlines, Inc., 2001 U.S. Dist. LEXIS 20888 (D.C. Minn. 2001)(enforcing award that sustained discharge).

[14]    Weber, 253 F.3d at 827, n.3.

for their behavior.[15]  As a result, the court rejected the employer's appeal and ordered

the employer to comply with the arbitration award.  This is the extremely-narrow

standard required by <u>Eastern Associated Coal</u>, and it is this narrow standard that the

Court must use to reject the Company's pubic-policy argument in this case.

### 2.    Third Circuit precedent support's the Union's position

The Company will likely rest its public-policy argument on the Third Circuit's

decision in <u>Stroehmann Bakeries, Inc. v. Local 776, Int'l Bhd. of Teamsters</u>, 969 F.2d

1436 (3d Cir. 1992).  The court in <u>Stroehmann</u> recognized a public-policy in favor of

employer sanctions against employees who commit sexual harassment, and vacated a

labor arbitration award that reinstated a sexual harasser.  But that decision does not

require this Court to vacate the Simpkins Award; to the contrary, <u>Stroehmann</u> supports

the Union's argument that the Award must be enforced.

The facts in <u>Stroehmann</u> are distinguishable from facts here in a significant

respect -- the arbitrator in <u>Stroehmann</u> reinstated an accused harasser without

determining whether the employee actually harassed his co-worker, while the Arbitrator

in this case specifically determined that Paul Dannenhower did <u>not</u> harass anyone or

engage in any other misconduct warranting discipline.  In <u>Stroehmann</u>, the arbitrator

sustained the union's grievance on procedural grounds, because he determined that

the employer did not perform a full and fair investigation.  As result, the arbitrator

reinstated the employee without determining whether he engaged in any misconduct,

---

[15]  "There is no public policy that every harasser must be fired."  <u>Id.</u> at 826-27,
n.3 (quoting <u>Westvaco Corp. v. United Paperworkers Int'l Union</u>, 171 F.3d 971, 977 (4th
Cir. 1999)).

and the Third Circuit vacated the arbitration award without reaching the question of whether public policy required discharge as the only appropriate sanction for a sexual harasser.[16]  Thus, <u>Stroehmann</u> does not require that the Simpkins Award be vacated. In fact, because Arbitrator Simpkins determined that Dannenhower's conduct did not amount to sexual harassment, <u>Stroehmann</u> supports the Union's contention that the Award must be enforced.

### 3.    The public-policy exception does not apply in this case

The facts in both <u>Stroehmann</u> and <u>Weber</u> differ materially from the facts in this case, but each case serves as an example that the public-policy exception does not apply in this case.  In <u>Stroehmann</u>, the court vacated an arbitration award because the arbitrator reinstated an employee on a technicality, without determining whether the employee's conduct amount to sexual harassment.  As a result, an employee who may very well have been a harasser was returned to work without sanction.  On the opposite end of the spectrum, in <u>Weber</u>, the court affirmed an arbitration award reinstating a discharged harasser because the punishment imposed by the employer was too harsh. Thus, in that case a harasser was permitted to return to work, but with some measure of discipline.

---

[16]  This fact was noted by the Fifth Circuit in distinguishing <u>Stroehmann</u> from the facts in <u>Weber</u> and rejecting the employer's public-policy argument:

> [T]he Stroehmann court recognized that when an arbitrator addressed the merits of the sexual harassment claims against the discharged employee and them made the determination that a sanction less severe than discharge was the appropriate remedy, the arbitrator would not violate public policy by reinstating a sexual harasser without back pay.

<u>Weber</u>, 253 F.3d at 827, n.3 (citing <u>Stroehmann</u>, 969 F.2d at 1443).

Here, unlike <u>Stroehmann</u>, the Arbitrator reached the merits of the harassment charge.  And here, unlike <u>Weber</u>, the Arbitrator determined that <u>no</u> <u>harassment</u> <u>occurred</u> -- Arbitrator Simpkins found that Paul Dannenhower did <u>not</u> engage in conduct that was "unwelcome, offensive, hostile, intimidating or abusive in a sexually harassing manner."  (Award, at 15.)

Thus, in this case Arbitrator Simpkins did exactly what the law requires -- he made a determination on the merits of the harassment charge, found that there was no misconduct and that the discharge was not for "proper cause," and reinstated the employee with back pay.  And just as there is no explicit, well-defined and dominant public policy that prohibits an agreement to reinstate an employee found to have sexually harassed another employee, surely there is no policy to prohibits an agreement to reinstate an employee merely <u>alleged</u> to have engaged in that conduct. Because this is exactly the sort of agreement presented to the Court in this case, the Court must reject the Company's public-policy argument and enforce the Simpkins Award in its entirety.

## IV.    CONCLUSION

Based on the above, it is clear that there is no genuine issue as to any material fact and that the Union is entitled to judgement as a matter of law for the following reasons:

(1) the Simpkins Award draws its essence from the 1999 Agreement and was rationally derived therefrom; (2) the Simpkins Award falls within the Arbitrator's contractual jurisdiction and authority; and (3) the Simpkins Award does not violate any explicit, well-defined and dominant public policy.

Because of this, the Union respectfully requests that the Court enter an Order granting the Union's Motion for Summary Judgment and denying Just Born's Motion for Summary Judgment.  The Union also requests that the Court take the following action:

(a)  order the Company to take the actions required by the Simpkins Award,                    including the reinstatement of Paul Dannenhower with back wages, plus       pre-judgment interest;

(b)  award the Union's reasonable costs and attorneys' fees; and

(c)  award such other relief as the Court may deem just and proper.

Respectfully submitted,

**WILLIG, WILLIAMS & DAVIDSON**


By:    _____
RICHARD G. POULSON, ESQUIRE
Attorney I.D. Number 80843
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103   (215) 656-3600

Dated: November 22, 2002          Attorneys for BCTGM Local 6

21