IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUST BORN, INC., | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LOCAL UNION 6, BAKERY, | : | |
| CONFECTIONARY, TOBACCO | : | |
| WORKERS & GRAIN MILLERS | : | No. 02-2626 |
| INTERNATIONAL UNION OF | : | |
| AMERICA, | : | |
|     Defendant. | : | |

SCHILLER, J.                                                                                                  December    , 2002

**MEMORANDUM AND ORDER**

      In this action, Plaintiff Just Born, Inc. ("Just Born" or "the Company") asks the Court to vacate an arbitration award that reinstated its employee, Mr. Paul Dannenhower. Just Born discharged Mr. Dannenhower after an alleged violation of its Equal Employment Opportunity policy. Defendant Local Union 6, Bakery Confectionary, Tobacco Workers and Grain Millers International Union of America ("Local 6" or "the Union") brought a grievance on behalf of Mr. Dannenhower pursuant to a collective bargaining agreement between the parties. The parties could not reach agreement on the grievance and on December 13, 2001, it was arbitrated before Arbitrator John Paul Simpkins. On April 5, 2002, Arbitrator Simpkins sustained the grievance and ordered Just Born to reinstate Mr. Dannenhower with an expunged record, full back pay, and no loss of benefits or seniority. Plaintiff Just Born brought this action to vacate the arbitration award, arguing that: (1) the arbitrator exceeded the bounds of his authority; and (2) the award violates public policy.

      Now before the Court are cross-motions for summary judgment. An oral argument was held on December 6, 2002. For the reasons discussed below, I grant summary judgment in favor of Defendant Local 6 and against Plaintiff Just Born.

I.  **BACKGROUND**

This action arises out of the discharge by Plaintiff Just Born, a candy manufacturer located in Bethlehem, Pennsylvania, of one of its factory employees, Paul Dannenhower. (Pl. Memo. in Supp. of Summ. J., Ex. A. (Arbitration Award, dated April 5, 2002 (hereinafter "Award") at 2.)) I must take the facts as they were found by the arbitrator. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987) (holding that "an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them"). In this case, the facts are materially undisputed. (Award at 12 (finding that facts are undisputed).)

Just Born and Local 6 entered into a collective bargaining agreement that governs the working conditions of the Local 6's bargaining unit of production, maintenance, sanitation and shipping/receiving employees at the Bethlehem facility. Pursuant to the collective bargaining agreement, Just Born has the right to "suspend and discharge [an employee] for proper cause. . . ." (Def. Mot. Summ. J., Ex. B (hereinafter "Agreement") at 8.)  Similarly, the collective bargaining agreement has a three step grievance procedure for resolving employment disputes. If the grievance is not resolved by steps 1 or 2, the grievance may be submitted to an impartial arbitrator. (Agreement at 34.) Under the collective bargaining agreement, the arbitrator "shall have jurisdiction and authority to interpret and apply the provisions of [the] agreement insofar as shall be necessary to the determination of [the] grievance" and his decision will be final and binding. (Agreement at 34-35.)

Just Born also has an established EEO policy regarding discrimination in the workplace, which it describes as a "zero tolerance" policy. (Pl. Memo. in Supp. Summ. J. at 24.) The policy stated that "the following are inappropriate, are in violation of this policy, and as such are prohibited, regardless of whether they are illegal. They include, but are not limited to: verbal abuse

of a sexual nature; verbal commentaries about an individual's body, sexuality, or sexual orientation." (Award at 7 (quoting Just Born's EEO Policy).)  In addition, the policy prohibits: "engag[ing] in unwelcome sexually-oriented or otherwise hostile conduct which has the purpose or effect of interfering unreasonably with another person's work performance or of creating an intimidating, hostile, abusive, or offensive working environment."  (Award at 7 (quoting Just Born's EEO Policy).)

Before the incident that triggered his discharge, Mr. Dannenhower had been progressively disciplined by Just Born for three other violations of the EEO policy. (Award at 2.)  The incident that triggered Mr. Dannenhower's discharge occurred on June 22, 2000.  On June 22, 2000, Mr. Dannenhower had entered the office of Ms. Angie Gutekunst, Community Affairs Coordinator for the Company, who had recently announced her first pregnancy.  (*Id.*)  He congratulated her on her pregnancy and asked, "Are you going to breast-feed?"  When Ms. Gutekunst replied affirmatively, Mr. Dannenhower then asked if she was going to share the milk with her husband.  Ms. Gutekunst told Mr. Dannenhower that his remark was disgusting. (*Id.*)  Mr. Dannenhower continued the conversation and Ms. Gutekunst again replied with "that's disgusting."  Ms. Gutekunst's telephone rang and the conversation ended.  (*Id.* at 4.)  Ms. Gutekunst believed that the conversation violated Just Born's EEO policy but was preparing to go on a week's vacation and did not "immediately register a complaint. . . ."  (*Id.*)  After her vacation, she returned to work and Mr. Dannenhower's comments were still bothering her.  She discussed the incident with a co-worker and the co-worker advised her to report the incident, which she did.

After the incident, Mr. Dannenhower was also scheduled for a two week vacation.  Upon his return, he was suspended pending discharge.  Just Born decided to terminate Mr. Dannenhower because the June 22, 2000 incident "constituted unacceptable and inappropriate harassment of a

3

female office employee." (Award at 12 (quoting termination letter).)  Mr. Dannenhower filed a grievance that was eventually arbitrated.

At arbitration, the parties were able to offer evidence and submit Post-Hearing Briefs to Arbitrator Simpkins. In his award, Arbitrator Simpkins sustained the grievance stating that "[u]nder the circumstances it is difficult to conclude that [Ms. Gutekunst] felt harassed" or offended.  In determining whether Mr. Gutekunst was offended, the arbitrator was persuaded by the fact that she did not immediately report the incident and that she did not adequately communicate her wish to stop the conversation. (Award at 12-13.)  As such, the arbitrator held that there was no triggering event to warrant the discharge of Mr. Dannenhower and did not consider his other violations of EEO policy for which he was already disciplined.  (Award at 14-15.)  Plaintiff Just Born now asks this Court to vacate the arbitration award because it claims the arbitrator exceeded the scope of his authority and the award violates public policy.

## II.    DISCUSSION

### A.    Standard of Review

#### 1.    Summary Judgment Standard

To prevail on a motion for summary judgment, a movant must show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  A court may grant summary judgment if the non-moving party fails to make a factual showing "sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof. . . ." *Id.* at 322.  This standard is the same for cross-motions for summary judgment.  *See Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987).

**2.    Review of Arbitration Awards**

Generally, the courts have only a very limited power to review a labor arbitration award by an arbitrator appointed pursuant to a collective bargaining agreement. *See Stroehmann Bakeries, Inc. v. Local 776, Int'l Bhd. of Teamsters*, 969 F.2d 1436, 1441 (3d. Cir. 1992) (citing *Misco*, 484 U.S. at 36). If the arbitrator's award "'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,'" the award is legitimate and should not be vacated. *See Misco*, 484 U.S. at 36 (quoting *United Steelworkers of America v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)). The award is still legitimate under these circumstances "even if the court finds the basis for it to be ambiguous or disagrees with its conclusions under the law." *See Stroehmann Bakeries*, 969 F.2d at 1441 (citing *Enter. Wheel*, 363 U.S. at 599). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Misco*, 484 U.S. at 38.

There are, however, exceptions where a court can review the merits of labor arbitration awards. *See id*. One such exception allows a court to vacate an arbitration award when it is contrary to public policy. *See id.* (stating that exception is "based on general principle that courts may not enforce contracts which are contrary to public policy" (citing *W.R. Grace & Co. v. Local 259, Int'l Union of the United Rubber Workers*, 461 U.S. 757, 766 (1983))). This exception does not, however, give courts broad discretion; rather courts can only vacate arbitration awards that violate "'some explicit public policy' that is 'well-defined and dominant, and [can] be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *See Misco*, 484 U.S. at 43 (quoting *W.R. Grace*, 461 U.S. at 766 (citations omitted)). In its determination, a court must determine "whether the award created any explicit conflict with

5

other 'laws and legal precedents.'" *See id.* Although the Supreme Court has held that "courts' authority to invoke the public policy exception is not limited solely to instances where the arbitration award itself violates positive law," the pubic policy exception is narrow and must meet the principles in *W.R. Grace* and *Misco* as described above. *See E. Assoc. Coal Corp v. United Mine Workers*, 531 U.S. 57, 63 (2000).

    **B.**    **Exceeding Authority**

Plaintiff contends that the arbitrator exceeded his authority in reaching the award for two reasons. First, Plaintiff argues that the arbitrator unilaterally changed the scope of the issue before him. Second, Plaintiff argues that he applied his own standards of decency and morality in deciding the issue before him.

I do not agree that the arbitrator has exceeded his authority in deciding the award; he construed the meaning of "proper cause" as required by the collective bargaining agreement. The collective bargaining agreement called for the arbitrator to interpret its provisions. Under the collective bargaining agreement, the Company is allowed to suspend and discharge for proper cause. Thus, it was completely within the arbitrator's authority to determine whether Mr. Dannenhower's discharge was supported by proper cause. The arbitrator viewed the evidence, including Mr. Dannenhower's discharge letter, and determined that the question before him was whether the "triggering incident," rather than the pattern of violations, constituted "proper cause." Furthermore, the arbitrator found that "[i]mplicit in the concept of just cause for discipline is the requirement of wrongdoing. . ." and "[i]n the absence of a triggering event which will support discipline, the grievant's discharge cannot stand." (Award at 14-15.) As such, the arbitrator concluded that no such event had occurred because the conduct that the Company cited to support its discharge did not violate the EEO policy. This interpretation of the grievance is an arguable construction of the

contract between the parties and a conclusion that I cannot vacate even if I disagreed with it. *See Misco*, 484 U.S. at 38 (holding that once parties have authorized an arbitrator to give meaning to language of agreement, a court should not reject an award on the ground that the arbitrator misread the contract); *see also United Steel Workers v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960) (holding "courts . . .have no business weighing the merits of the grievance, considering whether there is equity in a particular claim or determining whether there is particular language in the written instrument which will support the claim. . . "). Similarly, although Plaintiff contends that the arbitrator applied his own morality and decency to the facts, such contention is not supported by the Arbitrator's written findings. I cannot say that he was applying his own morality, decency or brand of industrial justice. Thus, I do not find that the arbitrator exceeded his authority in rendering his award.

      **C.**     **Violation of Public Policy**

Alternatively, Plaintiff argues that the arbitration award should be vacated because it violates public policy against sexual harassment. More specifically, Plaintiff asserts that the award violates a strong public policy against sexual harassment that encourages employers to punish inappropriate workplace behavior before it becomes legally actionable. Citing *Stroehmann Bakeries, Inc. v. International Brotherhood of Teamsters*, 969 F.2d 1436 (3d Cir. 1992), Plaintiff also argues that the award violates public policy because the arbitrator did not adequately take into consideration Mr. Dannenhower's previous misbehavior. In addition, Plaintiff contends that the award violates 42 U.S.C. § 2000e-5(e)(1), which allows a complainant 300 days from the date of the offending incident to file a discrimination claim.

While there is a well-defined public policy that encourages employers to have definitive EEO policies against sexual harassment and to punish violators under these policies, the award in

this case does not impede Just Born's efforts in this regard. *See generally Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca*, 524 U.S. 775 (1998); *see also Stroehmann*, 969 F.2d at 1442 ("Prevention is the best tool for the elimination of sexual harassment. An employer should take all the steps necessary to prevent sexual harassment form occurring, such as affirmatively raising the subject, expressing strong disapproval, developing appropriate employees of their right to raise the issue of harassment under Title VII, and developing methods to sensitize all concerned."). It is clear that Just Born has an aggressive EEO policy that makes certain conduct a violation despite its being actionable sexual harassment under the law. In this case, the arbitrator found that the Company had a commendable EEO policy that it routinely enforced but, in this particular situation, the policy had not been violated. Furthermore, I disagree with Plaintiff's contention that the arbitrator applied the legal definition of the sexual harassment rather than the EEO policy's definition of a violation. The arbitrator held that the conduct had to rise to the level of being "unwelcome, offensive, hostile intimidating or abusive in a sexually harassing manner," "in the context of the EEO policy" in order for there to be a triggering event that warranted proper cause for discharge. (Award at 15.) This standard, although similar to the definition of sexual harassment under Title VII, is derived from the Company's EEO policy. (Award at 7.)

Despite the well defined public policy requiring employers to take affirmative steps against sexual harassment, the Company is also bound by the collective bargaining agreement that only permits the Company to discharge an employee for "proper cause." "Proper cause" is a provision in the collective bargaining agreement that is subject to the arbitrator's interpretation. In determining whether Mr. Dannenhower was properly discharged for cause, the arbitrator determined that there was no violation of the EEO policy that triggered his discharge. Therefore, the Company

is now bound by this decision. It cannot be said that merely because the arbitrator disagreed with the Company in its determination of the existence of a violation, the award now violates a public policy favoring employers that have such policies. Nothing about this award will impede Just Born in further instituting its "zero tolerance" policy for sexual harassment when it has been violated. Therefore, I do not find this argument compelling enough to overcome the strong federal policy of allowing arbitrators to settle labor disputes without intervention of the courts.

Citing *Stroehmann*, a seminal case in this Circuit, Plaintiff also argues "a decision by a labor arbitrator to reinstate an employee accused of sexual harassment without adequate consideration by the arbitrator of the employee's pattern of misbehavior [i]s a violation of the public policy underlying Title VII." Additionally, Plaintiff cites *Stroehmann* in arguing that an award should be vacated when its reasoning demonstrates an insensitivity to the rights of the female complainant. (Pl. Memo. in Supp. of Summ. J. at 17.) In *Stroehmann*, however, the Third Circuit held that "an award which fully reinstates an employee accused of sexual harassment without a determination that the harassment did not occur violates public policy." 969 F.2d at 1442. In the present case, the arbitrator reinstated the employee after he made a determination, based on the evidence and the credibility of the witnesses that testified before him, that the Company's EEO policy had not been violated. Thus, Plaintiff's arguments based on *Stroehmann* are misplaced.

Finally, Plaintiff argues that in finding Ms. Gutekunst was not offended because she did not immediately report the incident, the arbitrator in his award violated the explicit public policy of Title VII that affords a complainant 300 days within which to make a discrimination claim. Although Title VII does provide 300 days from a particular incident to make a discrimination complaint, the arbitrator's reference to the lack of immediacy of Ms. Gutekunst's complaint is not dispositive. Rather, it was indicative to the arbitrator, as a fact finder, in corroborating whether Ms. Gutekunst

was in fact offended. The explicit policy of giving a complainant 300 days in which to complaint is not violated by taking this fact into consideration. The arbitrator found that "the evidence does not show that [Ms. Gutekunst] was offended." (Award at 14.) While I may disagree with the arbitrator's findings, my determination of the merits of this claim is not the standard of evaluating this appeal. Thus, I find that the award does not violate the public policies offered by Plaintiff.

### III.    CONCLUSION

Because the Company did not meet its burden in demonstrating that the arbitrator exceeded his authority or that the award would violate public policy, I deny Plaintiff's motion for summary judgment, grant summary judgment in favor of Defendant, and enforce the arbitration award. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JUST BORN, INC.,** | : | |
| Plaintiff, | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **LOCAL UNION 6, BAKERY,** | : | |
| **CONFECTIONARY, TOBACCO** | : | |
| **WORKERS & GRAIN MILLERS** | : | **No. 02-2626** |
| **INTERNATIONAL UNION OF** | : | |
| **AMERICA,** | : | |
| Defendant. | : | |

## ORDER

**AND NOW**, this    day of **December, 2002**, upon consideration of the cross-motions for summary judgment, and following oral argument thereon, and for the foregoing reasons, it is hereby **ORDERED** that:

(1) Plaintiff Just Born Motion for Summary Judgment (document no. 10) is **DENIED**.

(2) Defendant Local 6's Motion for Summary Judgment (document no. 9) is **GRANTED**.

(3) Summary Judgment is entered in favor of Defendant and against Plaintiff.

(4) The Clerk of Court is directed to close this case.

BY THE COURT:

_____
**Berle M. Schiller, J.**